UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

ANNTWANISHA THOMPSON,
both individually and as Administrator
of the estate of
DARRYL ANTHONY THOMPSON,

    Plaintiff,

v.

JOHN P. JOHNSON,
ROBERT MURPHY,
JAMES C. CROCETTA,
DORSY BROWN,
BRIAN D. FREESE, LEROY WYNN,
ROBERT J. STRAUSER, JEFF GRAVES,
EDWARD AUSBORNE,
JOHN JOHNSON, LARRY G. BROWN,
INES NIEVES-EVANS, and PATSY
MURRAY,

    Defendants.

Civil Action Number
08-CV-1241 (DNH/ATB)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

---

## JURISDICTION

1. This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

2. Darryl Thompson died on November 18, 2006. Anntwanisha Thompson was appointed as administrator of Darryl's estate on November 5, 2008, and was

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

1

provided with Letters of Limited Administration on November 6, 2008. A copy of the Orders of the Bronx County Surrogate's Court is attached to this complaint as Exhibit A.

3. Venue is proper under 28 U.S.C. § 1391(e)(2) because the Defendants reside in this Judicial District and the events giving rise to this action also occurred in this Judicial District.

## PARTIES

4. Plaintiff Anntwanisha Thompson is a citizen of the United States and currently resides in Bronx County. Ms. Thompson asserts claims in this litigation both as administrator of the estate of Darryl Anthony Thompson, and also in her individual capacity.

5. Decedent Darryl Anthony Thompson ("Darryl Thompson") was a citizen of the United States and resided in Fulton County at the time of his death on November 18, 2006. At the time of his passing, Darryl Thompson was 15 years old. Anntwanisha Thompson was appointed as the administrator of Darryl Thompson's estate on November 5, 2008.

6. Upon information and belief, Defendant John P. Johnson ("YDA Johnson") was and remains a duly appointed Youth Division Aide with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. At present, YDA Johnson is on paid suspension from the Office of Children and Family Services. Claims in this action are asserted against YDA Johnson in his individual capacity.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

2

7.  Upon information and belief, Defendant Robert Murphy ("YDA Murphy") was and remains a duly appointed Youth Division Aide with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. Claims in this action are asserted against YDA Murphy in his individual capacity.

8.  Upon information and belief, Defendant James Crocetta ("YDA Crocetta") was and remains a duly appointed Youth Division Aide with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. Claims in this action are asserted against YDA Crocetta in his individual capacity.

9.  Upon information and belief, Defendant Brian D. Freese ("YDA Freese") was and remains a duly appointed Youth Division Aide with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. Claims in this action are asserted against YDA Freese in his individual capacity.

10. Upon information and belief, Defendant Dorsy Brown ("YDA Brown") was and remains a duly appointed Youth Division Aide with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. Claims in this action are asserted against YDA Brown in his individual capacity.

11. Upon information and belief, Defendant Leroy Wynn ("Director Wynn") was, at the times relevant to this lawsuit, a duly appointed Youth Facility Director with the New York State Office of Children and Family Services, with his principal place of

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

3

business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. At present, Director Wynn is an Assistant Director at another OCFS Facility. Claims in this action are asserted against Director Wynn in his individual capacity.

12. Upon information and belief, Defendant Robert J. Strauser, III ("Assistant Director Strauser") was, at the times relevant to this lawsuit, a duly appointed Youth Facility Assistant Director with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. At present, Assistant Director Strauser has been assigned to the "girls" side of Tryon. Claims in this action are asserted against Assistant Director Strauser in his individual capacity.

13. Upon information and belief, Defendant Jeff Graves ("Assistant Director Graves") was, at the times relevant to this lawsuit, a duly appointed Youth Facility Assistant Director with the New York State Office of Children and Family Services, with his principal place of business being the Tryon Residential Facility, 881 County Highway 107, Johnstown, NY 12095. At present, Assistant Director Graves remains employed at Tryon in a different capacity. Claims in this action are asserted against Assistant Director Graves in his individual capacity.

14. Upon information and belief, Defendant Edward Ausborne ("Deputy Commissioner Ausborne") was, at the times relevant to this lawsuit, the duly appointed Deputy Commissioner for the Division of Rehabilitative Services of the New York State Office of Children and Family Services. Upon information and belief, Deputy Commissioner Ausborne is no longer employed by the Office of Children and Family

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

4

Services. Claims in this action are asserted against Deputy Commissioner Ausborne in his individual capacity.

15. Upon information and belief, Defendant John Johnson ("Former Commissioner Johnson") was, at the times relevant to this lawsuit, the duly appointed Commissioner of the New York State Office of Children and Family Services, with his principal place of business being NYS Office of Children and Family Services, Capital View Office Park, 52 Washington Street, Rensselaer, NY 12144-2796. At present, Former Commissioner Johnson, who is no relation to YDA Johnson, is no longer employed by the Office of Children and Family Services. Claims in this action are asserted against Former Commissioner Johnson in his individual capacity.

16. Upon information and belief, Defendant Larry G. Brown ("Deputy Commissioner Brown") was and remains the duly appointed Executive Deputy Commissioner of the New York State Office of Children and Family Services, with his principal place of business being NYS Office of Children and Family Services, Capital View Office Park, 52 Washington Street, Rensselaer, NY 12144-2796. Claims in this action are asserted against Deputy Commissioner Brown in his individual capacity.

17. Upon information and belief, Defendant Ines Nieves-Evans ("Associate Commissioner Nieves-Evans") was and remains the duly appointed Associate Commissioner for the Division of Rehabilitative Services, New York State Office of Children and Family Services, with her principal place of business being NYS Office of Children and Family Services, Capital View Office Park, 52 Washington Street, Rensselaer, NY 12144-2796. In that capacity, Associate Commissioner Nieves-Evans is responsible for the supervision of all residential facilities of the NYS Office of Children

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

5

and Family Services. Claims in this action are asserted against Associate Commissioner Nieves-Evans in her individual capacity.

18. Upon information and belief, Defendant Patsy Murray ("Murray") was and remains the duly appointed Director of Training for the New York State Office of Children and Family Services, with her principal place of business being NYS Office of Children and Family Services, Capital View Office Park, 52 Washington Street, Rensselaer, NY 12144-2796. In that capacity, Murray was responsible for implementing the training regimen utilized by the NYS Office of Children and Family Services, including the Office's training on restraint techniques. Claims in this action are asserted against Murray in her individual capacity.

## FACTS

19. Decedent Darryl Thompson was incarcerated at the Tryon Residential Facility until his untimely death on November 18, 2006. Darryl Thompson was 15 years old when he died, and was housed in Briarwood Cottage. Darryl was scheduled to be released from Tryon less than two months after his death.

20. Following a verbal disagreement (over denied recreation time) with Youth Division Aide ("YDA") Johnson, Darryl Thompson was subjected to a restraint by YDA Johnson, which consisted of YDA Johnson smashing Darryl Thompson's head against the wall and then slamming the boy to the ground. This restraint later developed into a "two man restraint," where Thompson was physically restrained by both YDAs Johnson and Murphy. During this restraint, YDA Johnson placed his body weight on top of Darryl Thompson's torso to pin him to the floor, moved his face on the ground to give

6

him a "rug burn" and jammed his arms far up his back, while the other YDA (Murphy) restrained Thompson's legs.

21.     Several witnesses testified that YDA Johnson appeared to be in a "bad mood" on the morning of the restraint.

22.     Upon information and belief, YDA Johnson weighs at least twice as much as Darryl Thompson, and is considerably larger in stature than a 15 year old boy.

23.     Several witnesses have testified that, during the course of this restraint, Darryl Thompson was not resisting, and cried, repeatedly, that he could not breathe. Thompson was also apologizing to YDA Johnson during the restraint, and begging the man not to break his arm. Several witnesses have also testified that it was obvious during the course of the restraint that Darryl Thompson was having difficulty breathing, and that, in response to these complaints, YDA Johnson verbally denigrated Thompson by telling him to "shut up" and using profanity. During the course of this restraint, YDA Murphy was holding Thompson's legs because the boy was "flapping" his legs in an effort to breathe. Regardless, the "two man restraint" of Thompson did not cease until Thompson was unconscious, unresponsive and, presumably, dying. After Thompson was restrained to the point of being unconscious, he was handcuffed by YDA Freese. Upon information and belief, YDA Johnson applied a large amount of force during this restraint because he was angry that Thompson had confronted him about taking out his personal problems on the residents of Briarwood.

24.     During the course of this restraint, YDA Brown proceeded to close the door to the bathroom in an effort to keep residents away from the area. YDA Brown

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

7

heard Thompson's repeated cries about being unable to breathe throughout the course of his restraint by YDAs Johnson and Murphy, and did nothing to intervene in the situation.

25. During the course of his restraint, YDA Murphy called a "Code White" to summon other YDAs to Briarwood Cottage for assistance with Thompson's restraint. In response to this "Code White," YDA Freese and YDA Crocetta, as well as non-party YDAs Robert Hoefs, and Jeffrey Delorme, appeared in Briarwood Cottage prior to the conclusion of Thompson's restraint. According to witness testimony, Darryl Thompson stopped crying for help, or making any noise, for at least seven minutes before medical staff arrived in Briarwood Cottage. At some point, the collected YDAs (Johnson, Murphy, Brown, Freese, Crochetta, Hoefs and Delorme) realized that Thompson was unconscious and not breathing, yet not one of these individuals made any effort to begin CPR on the boy or call 911 to get an ambulance. Instead, they simply stood there, looking at the boy, and likely started to coordinate their stories about what happened that day in an effort to cover for YDA Johnson. All seven of these YDAs receive annual CPR and First Aid training from the New York State Office of Children and Family Services.

26. When medical staff (two nurses) finally arrived in Briarwood Cottage, they found Darryl Thompson lying face down on the bathroom floor, with no heartbeat and no pulse. The boy had also urinated himself.

27. Upon information and belief, the Tryon Residential Facility, and other OCFS facilities, did not have any written procedures in place to address medical emergencies, nor did any of the resident cottages have inexpensive defibrillators. Upon information and belief, YDAs did not receive any appropriate training for how to deal with medical emergencies.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

8

28. Additionally, medical staff at Tryon has testified that there were previous complaints about not having defibrillators, and that Tryon administrators would not even purchase such a defibrillator for use by the medical staff. There has also been testimony that the decisions of medical staff at Tryon where repeatedly overridden by Tryon administrators who have no medical training.

29. Despite the efforts of medical staff, and the best efforts of hospital and ambulance staff, Darryl Thompson died on November 18, 2006. After an autopsy, a medical examiner ruled Thompson's death was a "homicide" caused by heart failure.

30. A later investigation by child protective services concluded that YDA Johnson has physically abused Darryl Thompson, and determined that the complaints of child abuse where "indicated." The Plaintiff incorporates by reference many of the factual observations contained in Bissell's investigation notes into this complaint, as they both confirm and supplement the Plaintiff's allegations.

31. YDA Johnson has a documented history of abusing residents at Tryon, and has been repeatedly disciplined by OCFS for his conduct. He has also previously been involved in several restraints where residents complained about being unable to breathe, as documented by Unusual Incident Reports that were later reviewed by senior Tryon and OCFS administrators. Johnson has previously been the subject of several complaints of child abuse, two of which were substantiated. Regardless, Johnson continued to be employed at Tryon, and no substantive effort was made by Tryon administrators to either remove him from his position, remove him from contact with juveniles, or provide him with appropriate training and supervision.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

9

32. Upon information and belief, there are a range of these incident reports from other YDAs, and other facilities, that document similar problems with juveniles being unable to breathe after being restrained. All of these reports are reviewed by OCFS administrators, including, especially, administrators from the Division of Rehabilitative Services (Ausborne, Nieves-Evans and Commissioner Johnson) who did nothing to change OCFS policies or otherwise address the clear and evident problems with OCFS' two-man restraint policies. These same officials, as well as senior Tryon supervisors, also refused to install inexpensive defibrillators in OCFS facilities because of "financial" concerns.

33. The Fulton County Grand Jury, in reviewing Thompson's death, further found a lack of appropriate written policies and training regarding medical and emergency procedures.

34. Upon information and belief, the death of Darryl Thompson is one of a string of disturbing abuses that have been inflicted upon residents of Tryon over the course of several years, including the rape and impregnation of a female resident, a resident who was left brain dead, and subsequently died, from a prone restraint,, countless claims of physical and sexual assault (many of which were ignored), and several claims of medical indifference.

35. Upon information and belief, senior officials in the New York State Office of Children and Family Services, together with supervisors at Tryon, were well aware of these abuses, and did little to address them absent being forced to do so by public scrutiny or investigations by law enforcement officials. Senior OCFS officials choose to treat children as prisoners, and tolerated mistreatment of juvenile residents for the sake of

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

10

order and control. This complete lack of supervision festered a culture of brutality at Tryon that has caused the death of a fifteen year old boy.

36. This culture of brutality was confirmed by a recent report of the Civil Rights Division of the United States Department of Justice, which found a pattern of unnecessary restraints at Tryon that employed the use of excessive force.

37. Upon information and belief, the "two man restraint" technique utilized by OCFS has been the subject of extensive criticism, including by the individual who developed the technique in the first place and various civil liberties organizations, because of the pressure that it puts on the chest cavities of juvenile residents—something that is even more dangerous because the OCFS "two man restraint" is performed with a resident lying face down. Despite the criticism, and the deaths of other residents in OCFS custody, OCFS has refused to revise its training regimen to utilize comparable techniques that are less dangerous, or to seek recertification of its training officers. In short, despite the problems with this technique, OCFS senior officials have done nothing to change their policies and procedures; policies and procedures which directly contributed to Darryl Thompson's death.

38. The individual Defendants herein, and each of them, acted within the scope of their authority to act as public servants for the State of New York.

39. During all times mentioned in this Complaint, the individual Defendants were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of New York.

40. The individual Defendants should have known that their actions violated clearly established law protecting the Constitutional and statutory rights of the Plaintiff.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

11

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION BY THE ESTATE OF DARRYL THOMPSON AGAINST DEFENDANTS YDA JOHNSON AND YDA MURPHY

### Violation of Constitutional Rights Under Color of State Law
### -- Excessive Use of Force/Cruel and Unusual Punishment--

41. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 40.

42. The Eighth and Fourteenth Amendments to the United States Constitution precludes the use of excessive force against juvenile detainees in the custody of the State, and also precludes the wanton and unnecessary infliction of pain upon those detainees.

43. The actions of the Defendants listed above violate these constitutional protections, in that they utilized an unreasonable amount of force during their restraint of Darryl Thompson, resulting in his death.

44. The actions of the Defendants listed above are motivated by malice and/or are grossly negligent.

45. This conduct on the part of these Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

46. In addition to damages to be paid under New York law, the estate of Darryl Thompson requests the imposition of damages under federal law for his loss of life.

47. As a direct and proximate result of the unconstitutional acts described above, the decedent has been irreparably injured, in that he is dead because of the Defendants' actions.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

12

## AND FOR A SECOND CAUSE OF ACTION BY THE ESTATE OF DARRYL THOMPSON AGAINST DEFENDANTS YDA JOHNSON, YDA MURPHY, YDA CROCETTA, YDA FREESE AND YDA BROWN

### Violation of Constitutional Rights Under Color of State Law
-- Deliberate Indifference to Serious Medical Needs/Cruel and Unusual Punishment-

48.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 47.

49.  The Eighth and Fourteenth Amendments to the United States Constitution precludes government officials from willfully denying medical treatment to a juvenile detainee with serious medical needs, as such conduct would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

50.  The actions of Defendants detailed above violated Darryl Thompson's rights under the United States Constitution. In short, it was not objectively reasonable for the Defendants to ignore Darryl Thompson's serious medical problems and refuse to provide him with appropriate, necessary medical treatment, such as CPR. All five defendants were trained, on an annual basis, to perform CPR and First Aid, yet none of them made any effort to perform CPR on Darryl Thompson.

51.  The Defendants' actions demonstrated a deliberate indifference to Darryl Thompson's serious medical needs.

52.  The actions of the Defendants are motivated by malice and/or are grossly negligent.

53.  This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

13

54.     In addition to damages to be paid under New York law, the estate of Darryl Thompson requests the imposition of damages under federal law for his loss of life.

55.     As a direct and proximate result of the unconstitutional acts described above, the decedent has been irreparably injured, in that he is dead because of the Defendants' actions.

## AS AND FOR A THIRD CAUSE OF ACTION BY ANNTWANISHA THOMPSON AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -- Violation of Right to Due Process of Law --

56.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 55.

57.     Plaintiff Anntwanisha Thompson lived with his son for all of his life but for his short detention by the Office of Children and Family Services. Ms. Thompson had a property and liberty interest in her relationship with her son.

58.     The Due Process Clause of the U.S. Constitution guarantees that one's property and liberty cannot be taken away without due process of law. The Defendants, by killing Darryl Thompson, deprived Anntwanisha Thompson of her relationship with her son, and consequently violated her due process rights.

59.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

60.     The actions of the Defendants are motivated by malice and/or are grossly negligent.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

14

61. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

### AS AND FOR A FOURTH CAUSE OF ACTION BY THE ESTATE OF DARRYL THOMPSON AGAINST WYNN, STRAUSER, GRAVES, AUSBORNE, COMMISSION JOHNSON, DEPUTY COMMISSIONER BROWN, NIEVES-EVANS AND MURRAY

#### Failure to Train and Supervise
#### Implementation of Policies that Violate Constitutional Rights

62. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 61.

63. Upon information and belief, Defendants Wynn, Strauser, Graves, Ausborne, Commissioner Johnson, Deputy Commissioner Brown and Nieves-Evans are responsible for supervising Youth Division Aides employed by the Office of Children and Family Services, including YDAs Johnson and Murphy.

64. Upon information and belief, the previous Defendants have failed in these responsibilities, including their responsibilities to supervise all YDAs. This is especially true given the existence of several facility incident reports detailing problems with restraints of juveniles – reports which led to harsh criticism from the United States Department of Justice. According to testimony in other litigation, these incident reports would be reviewed by the Assistant Facility Directors (Strauser, Graves), the Facility Director (Wynn), Commissioners and Facility Coordinators of the Division of Rehabilitative Services (Ausborne and Nieves-Evans), and the OCFS Commissioner (Commissioner Johnson). The incident reports relative to YDA Johnson paint a disturbing picture of repeated abuse and excessive force of juveniles. The Plaintiff

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

15

believes that these incident reports will document a pattern of similar misconduct at Tryon, and at other OCFS facilities, that the Defendants should have addressed in a direct and substantial way, rather than ignoring.

65.     Additionally, all of these Defendants, in addition to Defendant Murray, are responsible to implement appropriate training for YDAs under their supervision, including training on appropriate restraint techniques and emergency medical care. These Defendants have, with deliberate indifference, failed to implement an appropriate training regimen regarding these topics, which led to the injuries suffered by Darryl Thompson.

66.     Additionally, these Defendants are responsible to implement appropriate policies for employees of OCFS about these topics, and have failed in their responsibilities to do so.

67.     The above-named Defendants have also refused, for financial reasons, to purchase inexpensive defibrillators for OCFS housing units, despite the success that those units have shown in restarting someone's heart when it malfunctions. These defibrillators cost – on average -- $1,500. The Plaintiff maintains that her son's life could have been saved had appropriate medical equipment – costing $1,500 – be present at Tryon on November 18, 2006. This is but one example of medical decisions of trained medical personnel being overridden OCFS administration.

68.     The policies, procedures, customs and practices of the above-named Defendants violated the Constitutional rights of the Plaintiff under the Eighth and Fourteenth Amendments to the United States Constitution.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P. O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

16

69. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST YDA MURPHY AND YDA BROWN

### Violation of Constitutional Rights Under Color of State Law
### -- Failure to Intervene --

70. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 69.

71. Government officials have an affirmative responsibility to intervene when they observe the violation of civil rights by to government officials.

72. YDA Brown stood outside of the bathroom door at the same time that Darryl Thompson was complaining, repeatedly, that he could not breathe, and begging YDA Johnson not to break his arm. Regardless, YDA Brown did nothing to stop an excessive restraint, or intervene on Darryl Thompson's behalf. YDA Murphy, who participated in the restraint, also did nothing as YDA Johnson killed Darryl Thompson. The actions of these Defendants implicate their affirmative duty to intervene when witnessing a violation of someone's constitutional rights.

73. The actions of the Defendants listed above are motivated by malice and/or are grossly negligent.

74. This conduct on the part of these Defendants also represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

17

75. In addition to damages to be paid under New York law, the estate of Darryl Thompson requests the imposition of damages under federal law for his loss of life.

76. As a direct and proximate result of the unconstitutional acts described above, the decedent has been irreparably injured, in that he is dead because of the Defendants' actions.

## DEMAND FOR PUNITIVE DAMAGES

77. The actions and inactions of the Defendants described above were extreme and outrageous (or grossly negligent), and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the individual Defendants.

## DEMAND FOR TRIAL BY JURY

78. The Plaintiff hereby demands a trial by jury.

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

18

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Anntwanisha Thompson, both individually and on behalf of the estate of Darryl Thompson, requests that this Honorable Court grant her the following relief:

A. A judgment against all Defendants for compensatory damages in an amount to be determined by a properly charged jury.

B. A judgment against all individual Defendants for punitive damages in an amount to be determined by a properly charged jury.

C. A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief that this Court finds to be just, proper and equitable.

Dated: April 6, 2010                           Respectfully submitted by:

Elmer Robert Keach, III
USDC, NDNY Bar Roll No. 601537
LAW OFFICES OF ELMER ROBERT
    KEACH, III, PC
1040 Riverfront Center
P. O. Box 70
Amsterdam, NY 12010
Telephone:   518.434.1718
Telecopier:   518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

**ATTORNEY FOR PLAINTIFF ANNTWANISHA THOMPSON AND THE ESTATE OF DARRYL THOMPSON**

LAW OFFICES OF ELMER ROBERT KEACH, III
A PROFESSIONAL CORPORATION
1040 RIVERFRONT CENTER • P.O. BOX 70 • AMSTERDAM, NY 12010
TELEPHONE 518-434-1718 • TELECOPIER 518-770-1558
ELECTRONIC MAIL: bobkeach@keachlawfirm.com

19